1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MEE THAO, o/b/o J.X.,                    Case No.  1:19-cv-01473-HBK

12                    Plaintiff,               OPINION AND ORDER TO REMAND CASE
                                               TO COMMISSIONER
13            v.
                                               (Doc. No.  18)
14    ANDREW SAUL,
      COMMISSIONER OF SOCIAL
15    SECURITY,

16                    Defendant.

17

18          Mee Thao, on behalf of Plaintiff J.X. ("Plaintiff"), a minor, seeks judicial review of a final

19    decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her

20    application for supplemental security income under the Social Security Act.  (Doc. No. 1).  The

21    matter is currently before the Court on the parties' briefs, which were submitted without oral

22    argument.  (Doc. Nos. 18, 24-25).  For the reasons stated , the Court orders this matter

23    REMANDED for further administrative proceedings.

24                              **I.      JURISDICTION**

25          On January 21, 2015, Mee Thao protectively filed for supplemental security income on

26    behalf of Plaintiff J.X., a minor, with an alleged onset date of October 21, 2011.  (AR 193-201).

27    Benefits were denied initially (AR 110-13) and upon reconsideration (AR 121-24).  A hearing

28    was conducted before Administrative Law Judge Shiva Bozarth ("ALJ") on May 3, 2018.  (AR

1   46-78).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On November 13,

2   2018, the ALJ issued an unfavorable decision (AR 12-40), and on August 29, 2019, the Appeals

3   Council denied review.  (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. §

4   1383(c)(3) and 42 U.S.C. § 405(g).

5                                    **II.      BACKGROUND**

6          The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

7   decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

8   summarized here.

9          At the time of the hearing, Plaintiff was in ninth grade.  (AR 69).  Her mother testified that

10  she received extra help in the classroom and took work home with her that she was unable to

11  finish at school.  (AR 67-69).  Plaintiff reported that she had friends in school but did not see

12  them after school, and it was "kind of" difficult to understand the teacher when she was

13  explaining things.  (AR 74-75).  Plaintiff's mother testified that she has to remind her to do

14  chores, brush her teeth, comb her hair, and "look neat" for school.  (AR 67-68).

15                              **III.      STANDARD OF REVIEW**

16         A district court's review of a final decision of the Commissioner of Social Security is

17  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

18  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

19  is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

20  evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

21  conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

22  equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and

23  citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

24  consider the entire record as a whole rather than searching for supporting evidence in isolation.

25  *Id*.

26         In reviewing a denial of benefits, a district court may not substitute its judgment for that of

27  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

28  to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

1    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

2    harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

3    nondisability determination."  *Id.* (quotation and citation omitted).  The party appealing the ALJ's

4    decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

5    U.S. 396, 409-10 (2009).

6                        **IV.    SEQUENTIAL EVALUATION PROCESS**

7            To qualify for Title XVI supplemental security income benefits, a child under the age of

8    eighteen must have "a medically determinable physical or mental impairment, which results in

9    marked and severe functional limitations, and which can be expected to result in death or which

10   has lasted or can be expected to last for a continuous period of not less than 12 months."  42

11   U.S.C. § 1382c(a)(3)(C)(i).  The regulations provide a three-step process to determine whether a

12   child claimant is eligible for SSI benefits.  20 C.F.R. § 416.924(a).

13           First, the ALJ considers whether the child is engaged in "substantial gainful activity."  20

14   C.F.R. § 416.924(b).  Second, the ALJ considers whether the child has a "medically determinable

15   impairment that is severe," which is defined as an impairment that causes "more than minimal

16   functional limitations."  20 C.F.R. § 416.924(c).  Finally, if the ALJ finds a severe impairment,

17   the ALJ must consider whether the impairment "medically equals" or "functionally equals" a

18   disability listed in the regulatory "Listing of Impairments."  20 C.F.R. § 416.924(c)-(d).

19           If the ALJ finds the child's impairment or combination of impairments does not meet or

20   medically equal a listing, the ALJ must determine whether the impairment or combination of

21   impairments functionally equals a listing.  20 C.F.R. § 416.926a(a).  The determination of

22   whether a child's impairment functionally equals the listings requires an assessment of the child's

23   functioning in six broad areas of functioning, called "domains."  These six domains, which are

24   designed "to capture all of what a child can or cannot do," are as follows:

25                   1.    Acquiring and using information;

26                   2.    Attending and completing tasks;

27                   3.    Interacting and relating with others;

28                   4.    Moving about and manipulating objects;

                                                      3

1           5.    Caring for yourself; and

2           6.    Health and physical well-being.

3 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's impairment will be deemed to functionally equal a

4 listed impairment if the child's condition results in a "marked" limitations in two domains, or an

5 "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  An impairment is a "marked

6 limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or

7 complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  By contrast, an "extreme limitation" is

8 defined as a limitation that "interferes very seriously with [a person's] ability to independently

9 initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

10 **V.**     **ALJ'S FINDINGS**

11      At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

12 since January 21, 2015, the application date.  (AR 18).  At step two, the ALJ found Plaintiff had

13 the following severe impairments: specific learning disorder, speech language impairment, and

14 borderline intellectual functioning.  (AR 18).  At step three, the ALJ found Plaintiff does not have

15 an impairment or combination of impairments that meets or medically equals the severity of one

16 of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1.  (AR 18).  The ALJ then

17 determined that Plaintiff does not have an impairment or combination of impairments that

18 functionally equals the severity of the listings.  (AR 20).  As a result, the ALJ concluded that

19 Plaintiff has not been disabled, as defined in the Social Security Act, since January 21, 2015, the

20 date the application was filed.  (AR 34).

21 **VI.**     **ISSUES**

22      Plaintiff seeks judicial review of the Commissioner's final decision denying her

23 supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1).

24 Plaintiff raises the following issues for this Court's review:

25      1.   Whether the ALJ properly weighed the medical expert testimony; and

26      2.   Whether the ALJ properly weighed the opinion of Cynthia Hickey, Plaintiff's teacher.

27 (Doc. No. 18 at 9-12).

28 /////

4

## VII.   DISCUSSION

### A. Dr. Milford Schwartz

Medical expert pediatrician Dr. Milford Schwartz testified at the May 3, 2018 hearing.

(AR 52-63).  Dr. Schwartz testified that Plaintiff has the severe impairment of language learning

disability.  (AR 52-53).  He further opined that Plaintiff does not meet or equal a listing at step

three, but she does functionally equal a listing "with a significant caveat."  (AR 53-54).  In this

case, as noted by Dr. Schwartz, Plaintiff is bilingual and "[t]here are very definitive technical

regulations for assessing language and cognitive functioning and the presence of bilinguality."

(AR 54).  Further, as Dr. Schwartz testified:

> Dr. Schwartz: Testing at the school has been done in both Mang and English, and the school evidence indicates that she has had – and over time – significant deficiencies in both languages.  Now, technically speaking I've worked in a bilingual setting at the University of Illinois, not Mang, but for Spanish, and what we find is that bilingual children, while they do better in two languages than an untrained child would do in the other language, obviously, that they haven't been raised in, they have deficits in both languages if you test them.

> ALJ: Okay.

> Dr. Schwartz: Mostly --- especially when they're younger because they get confused between the two languages and so if they're speaking to people who speak only one of those two languages they're -- they just frequently have problems with receptive and expressive which is really cultural, rather than medical.

> ALJ: Okay.

> Dr. Schwartz: Okay.  At some point in time however -- and I – again, this is not my area of expertise, but at some point in time over a period those deficits become essentially permanent.

> ALJ: Okay.

> Dr. Schwartz: Not incurable but they -- you know it crosses the line between bilingual cultural problems and being a deficit, because the child is then expected to function, for instance, in a school setting in an English-speaking setting, pretty much, assuming that's where they are.  And they may have problems.  And that seems to be the case with this young lady.  There's significant issues with both perceptive and expressive functioning.  The school record indicates that in some cases she's reluctant to talk.  That may be adaptive because of her negative experiences with not being able to communicate.  As I mentioned I am not -- I have no expertise in looking at the testing that was done and determining if it was -- satisfied the technical

5

requirements that the regulations require in terms of bilingual verification.  However, **looking at the evidence there's no question in my mind that for whatever reason this youngster has both markedly significantly -- markedly severe functional deficits in both receptive functioning, which would be domain 1, acquiring and using information, and also in the ability to carry on normal conversations in either language**, with the school noting that she is limited to essentially single words or short phrases even at her current age long after she's been getting intervention.  So, again, with the caveat that I can't exclude some technical issue with bilingual testing, from a functional point of view I don't think there's any question that her current status, according to the evidence that I looked at in her multiple school reports over several years that I would say that her learning disability is basically a language disability or a verbal learning disability. . . . **Again I'd have to qualify it because I could not exclude some technical issue with the testing that was done that would void the results of those testings, because it was improperly done under the regulations in terms of either cognitive testing, which a psychologist would be more familiar with, or speech and language, where a speech and language pathologist familiar with the program rules might be able to look at that.  But I -- other than that I don't think there's really -- from a clinical perspective -- any question in my mind that regardless of the etiology of this the child currently now has marked and severe language deficits which would be sufficient to functionally equal.**

**ALJ: Okay. So it's your opinion there's a marked limitation in domain 1?**

**Dr. Schwartz: And domain 3**.

ALJ:  And domain 3.  Is there any limit –

Dr. Schwartz:  And I do not see any significant limitations in any other domains.

ALJ: Okay.

Dr. Schwartz: That I see no severe physical impairments, no adverse impact of any prescribed medication, because that's not mentioned.  No motor deficit.  No significant behavioral issues are noted.  The school said that she's -- you know, tends to be a sweet and compliant young lady.  Just has difficulty comprehending and expressing herself.

ALJ:  Okay.  And is it your opinion that she has functionally equaled the listing since at least January 21st of 2015?

Dr. Schwartz: Well again you have to know -- you have to be an expert and have an expertise and when it crosses the line between a cultural issue and a medically determinable impairment but I have records going back to 2011 and they're consistent throughout.

6

1   (AR 54-57) (emphasis added).  The ALJ gave significant weight to Dr. Schwartz's opinion that

2   Plaintiff "had no medical conditions or physical limitations" because "it was consistent with the

3   medical record and overall evidence of record."  (AR 26).

4            Plaintiff argues that ALJ "erred in failing to address the vast majority of Dr. Schwartz's

5   opinion about Plaintiff's functioning.  The ALJ afforded significant weight to Dr. Schwartz's

6   opinion that Plaintiff had no physical or medical conditions but failed to discuss Dr. Schwartz's

7   opinion regarding Plaintiff's mental impairments."  (Doc. No. 18 at 10).

8            The Court agrees.  While the ALJ need not discuss every piece of evidence presented, he

9   must explain why "significant, probative evidence has been rejected." *Vincent v. Heckler*, 739

10   F.2d 1393, 1394-95 (9th Cir. 1984); *see also* 20 C.F.R. § 416.927(c)(2) ("Regardless of its

11   source, we will evaluate every medical opinion we receive."); *Brown-Hunter v. Colvin*, 806 F.3d

12   487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or

13   speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be

14   extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully

15   determine whether the ALJ's conclusions were supported by substantial evidence.").  Here, the

16   ALJ entirely failed to consider Dr. Schwartz's expert opinion that Plaintiff functionally equaled

17   two listings, much less explain why he presumably gave no weight to the medical expert's

18   opinion.  This constitutes error.

19            Defendant argues that Dr. Schwartz's opinion as to Plaintiff's mental functioning was not

20   significant or probative "in light of his own admission that his opinion was with 'significant

21   caveat' as it was premised on his interpretation of testing that he had no expertise in interpreting."

22   (Doc. 24 at 14).  In support of this argument, Defendant cites to the ALJ's finding after Dr.

23   Schwartz testified at the hearing that it was necessary to send additional written interrogatories to

24   a psychological expert.  (AR 63-64).  However, the Court notes that despite seeking additional

25   expert testimony regarding Plaintiff's alleged mental health impairments, the ALJ nonetheless

26   explicitly noted at the hearing that "Dr. Schwartz's testimony to the effect that – I mean as a

27   functional – I mean if we're talking strictly about functional limitations there is a marked –

28   there's a marked limitation to interacting and relating with others on a functional level."  (AR 63-

1    64).  Moreover, as noted by Plaintiff, a plain reading of the hearing testimony indicated that Dr.

2    Schwartz did not "admit" to an overall lack of expertise; rather, he specifically noted that he

3    would not be able to identify any "technical issue[s] with the testing that would void the results."

4    (Doc. No. 25 at 3).  And regardless of this "caveat," Dr. Schwartz explicitly testified that from "a

5    clinical perspective" there was no "question in [his] mind" that Plaintiff had marked limitations in

6    domain 1, acquiring and using information, and domain 3, interacting and relating with others.

7    (AR 57).  "At no point did Dr. Schwartz suggest he did not feel qualified to assess Plaintiff's

8    functioning in the domains."  (Doc. No. 25 at 4).  Based on the foregoing, the Court finds Dr.

9    Schwartz's opinion was significant, probative evidence, and the ALJ was required to address his

10   testimony.  *See Vincent*, 739 F.2d at 1394-95.

11        Defendant next argues that "even if the Court found that the ALJ should have expressly

12   stated the weight he gave to Dr. Schwartz's opinion on mental functioning, any error was

13   harmless because the ALJ's decision made clear he gave great weight to Dr. Carver's opinion."

14   (Doc. No. 24 at 14).  Here, Dr. Joseph Carver, Ph.D. testified, by written interrogatory, that

15   Plaintiff's impairments did not meet, equal, or functionally equal a listing.  (AR 936-41).  The

16   ALJ gave his opinion significant weight because it was consistent with the medical record.  (AR

17   26).  However, the Ninth Circuit has found that "an ALJ errs when he rejects a medical opinion or

18   assigns it little weight while doing nothing more than ignoring it, asserting without explanation

19   that another medical opinion is more persuasive, or criticizing it with boilerplate language that

20   fails to offer a substantive basis for his conclusion."  *Garrison v. Colvin*, 759 F.3d 995, 1012-13

21   (9th Cir. 2014).  Thus, regardless of the weight accorded to Dr. Carver's opinion, the ALJ was

22   still required to give specific and legitimate reasons to reject Dr. Schwartz's contradicted opinion.

23   *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005) ("[I]f a treating or examining doctor's

24   opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing

25   specific and legitimate reasons that are supported by substantial evidence.").

26        Further, the reviewing court cannot consider an error harmless unless it "can confidently

27   conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a

28   different disability determination."  *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1056

1    (9th Cir. 2006).  Because Dr. Schwartz's opinion was not discussed in relation to the ALJ's

2    consideration of whether Plaintiff functionally equaled the listings, the Court cannot confidently

3    conclude that the disability determination would remain the same were the ALJ to fully credit Dr.

4    Schwartz's opinion.  When the ALJ improperly ignores significant and probative evidence in the

5    record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete . . .

6    [disability] determination."  *Hill*, 698 F.3d at 1161; *see also Vincent*, 739 F.2d at 1394-95.

7            Based on the foregoing, the Court finds the ALJ erred in failing to consider Dr.

8    Schwartz's expert opinion regarding Plaintiff's mental limitations.  On remand, the ALJ must

9    reconsider Dr. Schwartz's opinion along with the relevant opinion evidence, and, if necessary,

10   take additional expert testimony regarding whether Plaintiff functionally equals the severity of the

11   listings.

12           **B.  Cynthia Hickey**

13           In March 2015, Plaintiff's teacher Cynthia Hickey opined that Plaintiff had a serious-to-

14   very serious problem in acquiring and using information, a slight-to-obvious problem attending

15   and completing tasks, and a serious problem interacting and relating with others.  (AR 682-84).

16   In June 2015, Ms. Hickey opined that Plaintiff had a serious problem in acquiring and using

17   information, an obvious-to-serious problem attending and completing tasks, and a serious

18   problem interacting and relating with others.  (AR 468-70).  The ALJ gave both opinions

19   significant weight because they were "consistent with the medical and educational record, and the

20   overall evidence of record."  (AR 26).  Plaintiff argues the ALJ afforded Ms. Hickey's opinion

21   significant weight, but "failed to adopt Ms. Hickey's findings that marked limitations" in the

22   domains of attending and completing tasks and interacting and relating with others.  (Doc. No. 18

23   at 9-10).  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical

24   opinion was reversible error); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an

25   ALJ is not free to disregard properly supported limitations").

26           Defendant argues that the ALJ assessed functional limitations consistent with Ms.

27   Hickey's opinion.  (Doc. No. 24 at 9-12).  For instance, as to the domain of attending and

28   completing tasks, in March 2015 Ms. Hickey considered 13 separate activities and found a very

1    serious limitation in the activity of completing work accurately without careless mistakes;

2    however, Ms. Hickey additionally noted only an obvious problem in three activities, a slight

3    problem in four activities, and no problem at all with five activities.  (AR 683).  "Put succinctly,

4    Ms. Hickey found Plaintiff had slight to no problem in performing more than two-thirds of the

5    different activities delineated under the second domain."  (Doc. No. 24 at 9).  Similarly, as to the

6    domain of interacting and relating with others, Ms. Hickey considered multiple activities within

7    the domain and opined that Plaintiff had a very serious problem with three of the activities, a

8    serious problem with two activities, a slight problem with one activity, and no problem with

9    seven activities.  (AR 684).  Thus, Defendant contends the ALJ reasonably found that Ms.

10   Hickey's opinions, taken as a whole, were consistent with the ALJ's assessment of less than

11   marked limitations in these two domains.  *Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1222-23

12   (9th Cir. 2010) (ALJ's RFC findings need only be consistent with relevant assessed limitations

13   and not identical to them).

14          In her reply, Plaintiff argues that Defendant's argument "amounts to an assertion that the

15   ALJ permissibly averaged the teacher's opinion to find that Plaintiff 'overall' had less than

16   marked limitation in this domain.  However, this practice is expressly prohibited by the Agency's

17   Rulings."  (Doc. No. 25 at 2-3).  SSR 09-01p specifically instructs that "the rating of limitation of

18   a domain is not an 'average' of what activities the child can and cannot do.  When evaluating

19   whether a child's functioning is age-appropriate, adjudicators must consider evidence about all of

20   the child's activities. . . . The fact that a child can do a particular activity or set of activities

21   relatively well does not negate the difficulties the child has in doing other activities."  SSR 09-

22   01p, 2009 WL 396031, at *10 (Feb. 17, 2009).  As an initial matter, the Court finds no evidence

23   that the ALJ impermissibly "averaged" the teacher's opinion to support a finding that Plaintiff

24   had less than marked limitations in the domains of attending and completing tasks and interacting

25   and relating with others.  Moreover, while Plaintiff challenges the alleged failure of the ALJ to

26   incorporate the limitations opined by Ms. Hickey in the assessment of functional domains,

27   Plaintiff fails to specifically challenge the ALJ's findings of less marked limitations in the two

28   domains, based on evidence from the longitudinal record.  (AR 29-31); *see Carmickle v. Comm'r*

1    *of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issues

2    not raised with specificity in Plaintiff's opening brief).

3         Regardless, because the three-step evaluation process is dependent on the ALJ's proper

4    evaluation of the relevant medical evidence, including the medical expert testimony discussed

5    above, and because the ALJ's reconsideration of the step-three findings may be dispositive with

6    regard to consideration of whether Plaintiff functionally meets the listings, the ALJ is instructed

7    to reconsider Ms. Hickey's opinion on remand.  The ALJ is instructed to conduct a new

8    sequential analysis after reconsidering the relevant medical evidence, including additional

9    testimony from a medical expert, if necessary.

10                              **VIII.   CONCLUSION**

11        The Court finds that further administrative proceedings are appropriate.  *See Treichler v.*

12   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not

13   appropriate when further administrative proceedings would serve a useful purpose).  Here, the

14   ALJ improperly considered the opinion evidence, which calls into question whether the step three

15   assessment is supported by substantial evidence.  "Where," as here, "there is conflicting evidence,

16   and not all essential factual issues have been resolved, a remand for an award of benefits is

17   inappropriate."  *Treichler*, 775 F.3d at 1101.  Instead, the Court remands this case for further

18   proceedings.  On remand, the ALJ should reconsider the relevant medical expert testimony, and

19   take additional testimony from a medical expert if necessary.  In addition, the ALJ should

20   reconsider the entire three-step sequential analysis.  If necessary, the ALJ should order additional

21   consultative examinations.

22        ///

23        ///

24        ///

25        ///

26        ///

27        ///

28        ///

                                    11

Accordingly, it is **ORDERED**:

1.  Pursuant to sentence four of 42 U.S.C. § 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

2.  An application for attorney fees may be filed by separate motion.

3.  The Clerk shall terminate any motions and deadlines and close this case.

Dated:   January 5, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

12